552 A.2d 932

**WOLFE BROTHERS, INC., et al.**

v.

**FREDERICK COUNTY NATIONAL BANK.**

**No. 644, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Feb. 2, 1989.

David L. Johnson (Karen D. Spivey, on the brief), Westminster, for appellants.

George W. Shaffer (William N. Rogers and Shaffer & Rogers, on the brief), Rockville, for appellee.

Argued before GILBERT, C.J., and WILNER and ROSALYN B. BELL, JJ.

GILBERT, Chief Judge.

J.S. Mason Construction Company, Inc., a Maryland corporation and a minority business entity engaged in highway construction, was awarded a contract by Wolfe Brothers, Inc., a road building contractor. To secure the contract with Wolfe, Mason, in need of working capital, applied for a $50,000 loan from the Frederick County National Bank. The loan was denied. The vice-president of the bank, however, suggested to Mason that the loan would be reconsidered if Mason qualified for a guaranty from the Maryland Small Business Development and Finance Authority (the Authority).

Mason applied to and received a guaranty from the Authority. The Guaranty Agreement conferred upon the Authority the opportunity to cure any default by Mason and to

purchase the Mason contract from the bank. The agreement specifically required the bank to furnish advance notice to the Authority prior to the bank's accelerating the debt or taking any other action against Mason insofar as the loan was concerned.

Problems surfaced when Mason's loan from the bank became due. Mason could not meet the first payment on the principal, and the bank, hoping that Mason's difficulties could be overcome, elected not to call the loan. Instead, the bank extended indefinitely the payments of principal.

Subsequently, on May 31, 1985, Mason deposited $99,000 in its bank account. The money was to have gone towards payment of the accounts on the Wolfe job. One of the conditions in the Wolfe–Mason contract was that Mason would keep all accounts current.

Despite its agreement with the Authority and without any notice to Mason or the Authority, the bank seized $61,000 of the $99,000. The result of the seizure was that Mason could not pay its other creditors. That nonpayment constituted a breach of the Wolfe–Mason contract, so that Mason lost the contract. Both Mason and Wolfe sued the bank. The parties sought compensatory damages for 1) breach of an agreement with Wolfe, 2) conversion, 3) third party claim for breach of an agreement with Wolfe, 4) negligence, 5) third party claim for breach of an agreement with Maryland Small Business Development Financing Authority, and 6) interference with contract.

The case was tried before a jury in the Circuit Court for Frederick County. After the bank moved for judgment at the close of Mason's case, the negligence count was dismissed by the trial judge. A verdict was returned in favor of the bank on all the remaining counts except Mason's third party claim for breach of contract. As to that count the jury awarded Mason damages in the amount of $78,876. The bank moved for Judgment Notwithstanding the Verdict. The trial judge granted the bank's motion, and Mason journeyed here.

■ Four issues are posed to us, but we need answer only one of them; namely, did the trial court err in granting the bank's motion for Judgment Notwithstanding the Verdict when the bank failed to state any grounds or particulars in support of its Motion for Judgment made at the close of all the evidence?

At the conclusion of Mason's case, the bank moved for judgment, stating with particularity the reasons why the motion should have been granted. The trial court denied the motion as to all counts except one. The bank then put on its defense and, at the close of all the evidence, renewed the Motion for Judgment. The record discloses the following dialogue:

"The Court: Okay, we're finished.

[Bank's counsel]: We're all finished. Then, again, same motion, same reasons.

The Court: All right. Okay. Same ruling."

Thereafter, the case went to the jury which, as we have said, found that the bank breached its agreement with the Authority; and, as a result, the jury returned a verdict in favor of Mason. On the basis of its earlier Motion for Judgment, the bank moved for Judgment Notwithstanding the Verdict. The motion was granted.

We now inquire into the propriety of the granting of the Motion N.O.V.

Maryland Rules 2–519 and 2–532 regulate the motions in this instance. They provide, in pertinent part:

"Rule 2–519. MOTION FOR JUDGMENT.

(a) Generally.—A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence. The moving party shall state with particularity all reasons why the motion should be granted. No objection to the motion for judgment shall be necessary. A party does not waive the right to make the motion by introducing evidence during the presentation of an opposing party's case.

. . . .

**(c) Effect of Denial.**—A party who moved for judgment at the close of the evidence offered by an opposing party may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the party withdraws the motion.

. . . .

Rule 2-532. MOTION FOR JUDGMENT NOTWITH-STANDING THE VERDICT.

**(a) When Permitted.**—In a jury trial, a party may move for judgment notwithstanding the verdict *only if that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion.*" (Emphasis supplied.)

Mason argues that the trial court erred in granting the bank's motion for a judgment N.O.V. because the bank failed to state any particulars in support of the Motion for Judgment at the close of all the evidence.

Recently this Court was faced with a similar contention in *Ford v. Tittsworth,* 77 Md.App. 770, 551 A.2d 945 (1989). Analogizing *Ford* to the cases of *State v. Lyles,* 308 Md. 129, 517 A.2d 761 (1986); *Warfield v. State,* 76 Md.App. 141, 543 A.2d 885, *cert. granted,* 314 Md. 95, 548 A.2d 845 (1988); and *Rockville Corp. v. Rogan,* 246 Md. 482, 229 A.2d 76 (1967), Judge Bloom penned:

"[W]e deem it imperative to apply the same ruling with respect to 'renewal' of a motion for judgment under the civil rule as we applied to 'renewal' of a motion for acquittal under the criminal rule. Our holding is in accordance with the decision of the Court of Appeals in *Rockville Corp. v. Rogan,* [supra]. . . . There, in dealing with then Rule 552, a precursor to current Rule 2-519 (when the appropriate motion was one for a directed verdict rather than for judgment), the Court held that by introducing evidence after his motion was denied the appellant withdrew the motion; his subsequent motion, at

the conclusion of all the evidence, without stating the grounds therefor, left nothing for the Court to review on appeal. Consequently, even if appellant's motion, made at the conclusion of the plaintiff's case, can be regarded as satisfying the requirement of particularity because it referred to the holding in *Brehm v. Lorenz* [206 Md. 500, 112 A.2d 475 (1954)], that motion was withdrawn by the presentation of appellant's testimony. The subsequent 'renewal' of the motion, to 'put it on the record just for paperwork and clearing up things,' did not comply with the requirement of particularity."

In the instant case the bank neglected to comply with Md. Rule 2–519's requirement of particularity. Consequently, the motion for judgment N.O.V. should not have been granted because its basis was the Motion for Judgment made at the close of all the evidence. That motion was procedurally defective. Hence, it follows that the motion for judgment N.O.V. was likewise defective. Because it was defective, it was improperly granted. Therefore, on the basis of Md. Rule 2–532(a), we reverse the judgment of the trial court and reinstate the verdict.

■ For whatever solace it may be to the appellee, were this case before us on the merits, we would reverse the judgment. We would do so because Mason was an intended third party beneficiary of the Guaranty Agreement. That Agreement was created to induce the bank to loan Mason $50,000, a loan which was denied when the backing of the Authority was lacking. Furthermore, as we have said, Mason was an intended beneficiary of the Agreement's notice provision. Upon receipt of the notice of default, the Authority might have seen that the default was cured or it could have paid the guaranteed portion of the loan. The Guaranty Agreement with its notice provision, together with the function of the Authority, *i.e.*, to aid minority businesses, manifests that Mason was a third party beneficiary.

We recognize that it might be argued that, because the judge heard extensive discussion prior to his denying the motion for judgment at the conclusion of Mason's case, the application of the rule in this instance is harsh and appears to exalt form over substance. Nevertheless, the rule does not provide for any exceptions and must be applied even-handedly to both plaintiffs and defendants. Rules, as has been ofttimes said, are not guides to the practice of law but precise rubrics "established to promote the orderly and efficient administration of justice and are to be read and followed." *Robinson v. Board of County Comm'rs,* 262 Md. 342, 278 A.2d 71 (1971); *Herd v. State,* 25 Md.App. 284, 333 A.2d 659 (1975).

Despite the bank's argument to the contrary, it is clear to us that there was sufficient evidence to submit the case to the jury. *See Moran v. Williams,* 19 Md.App. 546, 313 A.2d 527 (1974). Sections 5.1 and 5.2 of the Guaranty Agreement provide:

"Section 5.1. *Procedures Upon Occurrence of Event of Default.* Upon the occurrence of a Default, the Lender shall give a Notice of Default to the Authority pursuant to Section 5.2 below. Within 15 calendar days after receipt of a Notice of Default, the Authority shall notify the Lender in writing of its intent to proceed in accordance with one of the options described in Section 5.3 below. *The Lender may not exercise any remedy under the Documents until the later of (a) receipt of such notice from the Authority or (b) the expiration of such 15 day period.*

Section 5.2. *Notification to the Authority.* The Lender *shall notify the Authority* in writing of the occurrence *of any Event of Default* within 15 days after such occurrence and shall notify the Authority in writing of the occurrence of any Technical Default within 30 days after Lender knows or reasonably should know of such occurrence. Such *notification shall state the procedures and remedies the Lender recommends* be followed and enforced." (Emphasis supplied.)

The bank contends that Mason was not an intended beneficiary of § 5.2 because it was the option of the Authority to determine whether to extend the loan. The bank misses the point.

The "notification clause" was intended to benefit the Authority *and* the minority contractor. The purpose of §§ 5.1 and 5.2, obviously, is to allow the Authority to ascertain what steps it must undertake to protect itself and to allow it to endeavor to assist the minority contractor in overcoming or working out the problem.

We shall not speculate as to what might have happened had the bank done what it was supposed to do, but there is the possibility that Mason would not have lost its contract with Wolfe. Perhaps the Authority would have taken an assignment of the bank's loan, paid it, or made some other mutually agreeable arrangement. In any event, we are unable to say that the jury's verdict on the facts was wrong.

JUDGMENT REVERSED. JURY VERDICT IN FAVOR OF APPELLANT IN THE AMOUNT OF $78,876 REINSTATED AND JUDGMENT ENTERED THEREON.

COSTS TO BE PAID BY APPELLEE.